Singleton, Judge:
These claims, considered by the Court as one, were filed before the Attorney General respectively on December 3, 1965, and February 9, 1966, and the evidence of the claimant and respondent offered and the record made before the Claims Examiner for that office at hearings held in Charleston, West Virginia, on June'13, 14, and 15, 1966,; and the deposition of Mr. Nathan November was taken on June 17, 1966, in New York City. No opinion was rendered by the Attorney General on this claim and the entire record and case file was delivered to this Court after July 1, 1967, for consideration and decision.
The Claimant, C. J. Langenfelder and Son, Inc., is a Maryland Corporation duly authorized to carry on business in the State of West Virginia, has engaged in all types of heavy construction over the past 50 years and was qualified by the State Road Commission of West Virginia to bid and perform work on road construction projects in West Virginia. On July 16, 1963, claimant filed a bid for the construction of the Wheeling Tunnel on a section of Interstate Route 70 in Ohio County, West Virginia, and was awarded a contract for such construction on July 24, 1963, on the basis of its low bid of $6,961,144.20. This project, designated No. 1-70-1 (12) 1 by the State Road Commission, was approximately 1,425 feet in length and the contract con *70 tained the usual provision that time was of the essence of the contract and the claimant agreed to complete same in 720 calendar days. Claimant began work on the project on or about August 21, 1963, and completed the boring of the tunnels by March 15, 1964, but concreting operations could not be commenced inside the tunnels until May 20, 1964, because of a delay on the part of the respondent in approving the concrete mixture. All of the foregoing facts set forth in the petition of the claimant in Paragraphs 1 through 6, together with the special provisions of the contract relating to the removal forms as set forth in Paragraph 10 thereof, having been stipulated by claimant and respondent.
On July 16,1964, the record discloses that the claimant began pouring operations on the concrete tunnel linings of the two tunnels, the claimant having previously performed initial concreting operations in the formation of anchor curbs in said tunnels and the forms for these anchor curbs having been stripped by claimant within 24 hours after completion with no objection by respondent. In pouring the concrete tunnel linings claimant used two specially constructed forms, (one for each tunnel) purchased specifically for this project. The record further discloses that on July 24, 1964, P. R. Hinkle, Project Engineer for the respondent, advised claimant by letter that claimant was removing the tunnel forms permaturely contrary to the provision of the contract and that the forms could not be removed for fourteen days or until the strength of the concrete had reached 2000 pounds per square inch. Claimant replied to this letter on July 28, 1964, asserting that the standard specifications referred to by Mr. Hinkle were overridden by the special damage provision of the special provisions of the contract.
The claim here considered is in the total amount of $293,432.08; $207,118.13 being for additional costs and expense due to maintenance of men and equipment during a thirty-two day shut down period, and the resultant additional cost of the tunnel concreting operations, all of said expenses being attributed to respondents’ insistance upon erroneous interpretation of the specifications; $8,077.30 for additional costs incurred by the claimant to its subcontractor, Delta Concrete Company, by reason of said delays; $30,042.99 for additional costs of back- *71 filling operations as a direct result of materials erroneously represented by respondent to be of a certain compaction classification in the specifications, and $48,193.66 as reimbursement for the cost of additional cement required to be used in the concrete mix by the claimant as result of a change in the concrete formula to be used after the bidding and letting of the contract and immediately prior to the beginning of concreting operations.
The respondent denied all the claims and took the position that the standard specifications incorporated by reference into the contract superseded the special provisions set forth therein relating to stripping of forms; that the claimant had mistakenly relied upon representations of officials of the respondent relating to the formula for the concrete to be used; that the additional expense, costs and delay was solely the fault of claimant and that claimant by reason of its cessation of activities under the contract had therefore breached the contract and was estopped to make any claim.
No issue was raised by respondent concerning the reasonableness of the sums alleged and proved by claimant to represent the additional costs and expense forming the basis of this claim.
There is further no evidence that any of the concrete placed in the tunnels on this project was ever in fact rejected or ordered removed for any reason by the respondent.
As to the assertion of the respondent that the claimant is estopped by reason of its cessation of tunnel concreting operations on August 26, 1964, resumed on September 28, 1964, this Court is of the opinion that this contention is without merit. The record discloses that the claimant did cease tunnel concreting operations on August 26, 1964, but did continue with other operations on the project. It ceased operation on the ground that respondent was erroneous in interpreting the specifications relating to the stripping of forms and immediately undertook negotiations to resolve the dispute. This Court is of the opinion that the respondent may well have invoked the forfeiture provisions of the contract against the claimant, but is further of the opinion that this right was waived when respondent elected not to do so, modified its position, and so advised claimant by telegram.
*72 Without embarking upon a laborious narration of the voluminous testimony offered on behalf of claimant and respondent, the documentary evidence tendered by the parties, the exhibits and expert reports offered, the deposition of Nathan November, the memorandums filed on behalf of claimant and respondent, the several motions to dismiss filed on behalf of respondent and the arguments of counsel, but after a careful examination of all of same, and after full consideration thereof, and the principles of contract law applicable and raised by the parties, the Court is of the opinion that the following premises were substantiated in law and by a preponderance of the evidence:
(1) That the special provisions of the contract relating to the stripping of forms governed operations on this project and that no provision of the standard specifications incorporated therein was shown to be applicable thereto;
(2) That the back fill materials to be excavated from the project and classified in the specifications on which the claimant bid as A-2-4 material by the respondents’ personnel, did not, in fact, meet this compaction classification;
(3) That claimant did not prove by a preponderance of the evidence that all of its additional winterizing expense was solely due to respondents’ action or inaction, the construction progress schedule filed by the claimant plainly contemplating certain winter concreting operations;
(4) That the claimant is entitled to reimbursement for the additional cost occasioned by the change in the number of bags of cement required to be used in the concrete mix;
(5) That the motions to dismiss as to the claims of Delta Concrete Company, a subcontractor of claimant, which claims are here filed as part of claimant’s petition and set forth as an obligation of claimant, on the ground of lack of privity of contract on the part of Delta Concrete Company, and on the further ground of failure to exhaust all legal remedies, are without merit.
Therefore, after consideration of all of the evidence and exhibits offered on behalf of the parties and the memoranda of authority and the arguments of counsel, this Court is of the *73 opinion that claimant has proved a valid claim against the State Road Commission of West Virginia, which the State of West Virginia as a sovereign commonwealth, should in equity and good conscience discharge and pay; and it is therefore our judgment that the claimant should recover the sum of $182,802.13 for losses sustained and additional expense incurred in the tunnel concreting operations, which sum includes a portion of the winterizing expense claimed; the sum of $30,042.99 for additional back filling expense incurred by reason of the failure of the excavated materials to meet the respondents’ representations, and the sum of $56,270.96 as compensation for additional costs incurred by claimant to its subcontractor, Delta Concrete Company, for winterizing expenses and the additional cement required by reason of the formula change; and a total award is hereby made to said claimant in the amount of $269,116.08.